ANNA C. PIERSON et al.

*v.*

EMMA GARDNER et al.

[Submitted December 9th, 1912.   Decided March 14th, 1913.]

Certain residents of this state became subordinate members of a volun-
tary beneficial association, composed of a supreme or general circle, and
circles or groups of members affiliated with and subordinate thereto, and
had, as a subordinate circle 193, accumulated a fund of money.   Certain
other members of said supreme circle, who were residents of the State of
New York, subsequently, and without the knowledge or assent of the
first-named members, procured a charter incorporating said supreme
circle under the laws of the latter state, and it was—*Held*, that the effect
of such incorporation, under the circumstances recited in this opinion,
was to change radically the entire legal character of the relations exist-
ing between the supreme and subordinate circles, and to free the latter
from their allegiance to the supreme body; and *held, also*, that the pur-
pose for which the members of subordinate circle 193 had been originally
organized having failed, the relationship between its members, *inter sese,*
partook so far of a partnership character that it became dissolved, and
the said fund must be divided so that each member should receive her
*pro rata* share thereof.

On appeal from a decree of the court of chancery advised by
Vice-Chancellor Garrison.

*Messrs. Ziegener & Lane,* for the appellants in cross-appeal
and appellees in main appeal.

*Messrs. Peter & John Bentley,* for the appellants in main ap-
peal and appellees in cross-appeal.

The opinion of the court was delivered by

VREDENBURGH, J.

This controversy concerns the distribution, under equitable
principles, of certain moneys ($1,966) now in court, which are

the accumulations of various entrance fees, subscriptions of members, fines, donations and the like, paid into a common fund by the members of voluntary beneficial associations of this state, who are parties to the suit.

The bill is filed by the complainants (circle 5) in the names of seventy-eight ladies, all of the county of Hudson, New Jersey, individually and collectively, associated as members of "Palisade Circle No. 5, Lady Forresters of America," against forty-two other ladies, defendants, named in the bill, and associated as members of "Palisade Circle No. 193, Companions of the Forest of America."

To avoid detail, and for the sake of clearness, the additions to the names of these branch associations will be omitted. It will be sufficient to designate the complainants as circle 5, and the defendants as circle 193.

The bill charges, among other matters, that all of the said one hundred and twenty named persons were, on October 16th, 1909, members of said circle 193, and that on that day at a meeting of the members of that association, regularly notified and convened, there occurred an important disagreement among them resulting in a change of the name of said circle 193 to said circle 5, and the formation and organization of the said circle 5, the complainants in the suit; that on that occasion a resolution was formally passed, to the effect that, as the members of said circle 193 could not "procure justice, nor equal rights from their parent body," called "The Supreme Circle," the said circle 193 should not thereafter be affiliated with or be a subordinate circle of said supreme circle.

It is the rival claims of these two, thus divided, subordinate groups, or circles of members, each one claiming to be the rightful circle (193), and entitled to the entire fund of $1,966, which lie at the foundation of the present litigation.

The bill proceeds to charge that circle 193, on October 16th, 1909, had on deposit in the Hudson Trust Company the said fund, and that it was the sole property of circle 193, and belonged to the individual members thereof, and that upon the changing of the name of circle 193 to circle 5, the said deposited money became the property of the complainants (circle 5).

It further charges that circle 193 was never incorporated under any laws of the State of New Jersey, and had no authority to operate or transact business in this state; that it was only a voluntary organization, organized by the members thereof for their mutual protection, and which could at any time change its name, or be dissolved by a vote of a majority of the members thereof, and that upon a dissolution the funds and property thereof became the property of the individual members, share and share alike; that this money upon a change of the name of the old organization into a new organization became the property of the new organization and of the individual members thereof.

The prayer of the bill, so far as now material, was, that the said forty-two defendant members of circle 193 might answer and an accounting be had between complainants and defendants; that a receiver might be appointed to take charge of said moneys and the defendants enjoined from drawing out or disposing of any of said moneys, and that a decree be made directing the receiver to pay over to complainants said funds, or their proportionate share thereof, or their aggregate share, and for such further relief as might seem meet.

By the decree under review it was found, as follows, viz.: "That the complainants and defendants, on October 16th, 1909, were members of a beneficial organization known as 'Palisade Circle No. 193, C. O. F. of A.;' that the action taken by them on October 16th, 1909, amounted to a practical dissolution of said Palisade circle, and that each member thereupon became entitled to her *pro rata* share of the funds on hand to the credit of said Palisade circle;" * * * "that the receivers appointed in this cause shall file their report, setting forth the balance in their hands after the payment of counsel fees, costs and expenses, and that such balance shall be distributed by said receivers among the members of said Palisade Circle No. 193, C. O. F. of A. (on October 16th, 1909), under the further order of this court herein."

The defendants have appealed from this decree on the stated ground that "only such persons as were members of said circle (193) and *remained loyal* thereto, should share in the distribution;" and that said decree should have dismissed the bill of

complaint; defendants also appeal from a further order of the chancellor (subsequently made) directing a counsel fee of $100, and other taxed costs to be paid to the solicitors of complainants.

The complainants have filed a cross-appeal on the stated ground that they, individually or collectively, as circle 5, were entitled to receive the *entire* fund in the hands of the said receivers after the payment of counsel fees and costs.

With the reasons given for this decree in the opinion below (which was oral), and with the result reached by it, we are in substantial accord.

It appeared by the evidence taken at the hearing, both documentary and oral (consisting of some four hundred and fifty pages of print), that the general scheme of these circles, or groups of members, consisted of a parent organization called a supreme circle, and various branch and subordinate circles which were affiliated with it, although none of them had been chartered or incorporated either in this state or elsewhere, except as hereafter mentioned. They had written constitutions and by-laws under which they claimed to have been governed. The supreme circle seems to have been instituted in June, 1883, but was never incorporated under the laws of any state until in November, 1907, when certain members (six in number), all residents of the city and State of New York, assuming to act in behalf of said supreme circle and its subordinates procured a charter under the laws of the State of New York by the corporate name of "Companions of the Forest of America."

The evidence shows that on October 16th, 1909, the said one hundred and twenty members of circle 193 held the meeting and passed the resolution of severance from the supreme circle, as above charged in the bill, and that, subsequently, another meeting was held, which apparently was attended by a minority of the members of circle 193, and at this meeting the said seceding resolution of October 16th, 1909, was reconsidered and voted down. This resulted in a schism in the organization of circle 193, some of the members associating themselves with said supreme circle and adopting a new name (circle 5), and others remaining loyal to said circle 193, each of said circles (193 and

5) claim to be the legitimate subordinate circle 193, and to be entitled to its property.

It nowhere is shown in the proofs that the members of circle 193 either assented to or recognized in any way the said New York incorporation of the supreme circle.

It is stated in the written constitution of circle 193 that

"it shall have for its object the raising of a fund or funds by entrance fees, subscriptions of members, fines, donations and by interest on the invested capital for the following purposes, viz.: Insuring sums of money toward defraying the expenses of the burial of deceased members, for rendering assistance to members when sick and unable to follow their employment and supplying them with medical attendance and medicine, in the manner hereinafter provided."

The New Jersey members of this fraternal society had elected, we must presume, to remain a purely voluntary association and not become incorporated. If they had desired to be bound by corporate ties they could have easily availed themselves of our act entitled "An act to incorporate associations not for pecuniary profit." *Comp. Stat. p. 125.*

The attempt of the New York members of the supreme circle to bring them within the dominion of a New York incorporation was, as has been shown, resisted and denied by them.

The learned vice-chancellor was of the opinion that the subordinate lodges were free to throw off their allegiance to the supreme circle; that the said action of these members at their two meetings, taken in their entirety, amounted under the circumstances to a practical dissolution of said circle 193, and that its property should be divided among its members so that each member should receive her *pro rata* share thereof.

We think the unauthorized incorporation of the parent supreme circle in New York changed materially the pre-existing legal relations between that body and its affiliated subordinate circles. From an association whose obligation to and control over its members was entirely voluntary, the supreme circle, by its formal incorporation in New York state, became thereafter clothed with compulsory powers over its members. Although the personnel of the members of these subordinate bodies, or groups,

might remain the same thereafter, the relations of the supreme body to its subordinates suffered radical change. It thereby became an entirely different legal entity.

To enumerate here the various effects in law produced by this change of said parent organization from a voluntary association to an incorporation, is unnecessary. The purpose for which the members of the subordinate circle had been originally organized, having failed, the relationship between its members, *inter sese,* partook so far of the nature of a partnership, that it became *ipso facto,* dissolved, and their property liable to the equitable distribution awarded by the decree below. The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON—11.

*For reversal*—None.